UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MCKINLEY DAVID JACKSON,** )<br>)<br>Plaintiff,   )<br>)<br>vs.   )<br>)<br>**SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>**COMMISSIONER,** )<br>)<br>Defendant.   | Civil Action Number<br>5:15-cv-2249-AKK |

### MEMORANDUM OPINION

McKinley David Jackson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard, and that his decision—which has become the decision of the Commissioner—is **AFFIRMED**.

### I. Procedural History

Jackson filed his application for Title II Disability Insurance Benefits as well as a Title XVI application for supplemental social security income on October 25, 2012, alleging a disability onset date of March 26, 2006 due to a hemorrhagic stroke with left side weakness, left wrist fusion, severe lower back arthritis, left hip

1

arthritis, and left knee arthritis. (R. 206). After the SSA denied his application, Jackson requested a hearing before an ALJ. (R. 94). The ALJ subsequently denied Jackson's claim, (R. 9–11), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–3). Jackson then filed this action pursuant to § 405(g) on December 10, 2015. (Doc. 1).

## II.     Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

    Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Jackson met the criteria for Step One because he had not engaged in any substantial gainful activity since his alleged onset date in March 2006. (R. 14.). Next, the ALJ acknowledged Jackson's impairments of "degenerative disc disease in the lumbar spine, and residual limitations related to a fusion of his left wrist in 1993 and left shoulder surgery in 1992" met the requirements of Step Two. (R. 15). The ALJ then proceeded to the next step and found that Jackson did not satisfy Step Three because he "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 15) (internal citations omitted). In this step, the ALJ also acknowledged that while the evidence prior to 2010 showed that Jackson was obese and "experienced residual limitations related to his left shoulder and left wrist surgeries" that were severe in combination, "[these limitations were] not 'severe' enough to meet or medically equal . . . one of the impairments listed in

6

Appendix 1." (*Id.*). The ALJ also found that there was no medical evidence to support a finding of disability based on Jackson's lumbar disc degeneration or lumbar facet syndrome. (*Id.*). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at his date last insured, Jackson had the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 404.1567(b), lifting and/or carrying 20 pounds occasionally and 10 pounds frequently." (R. 15). In Step Five, considering Jackson's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that, at his date last insured, Jackson was capable of performing his past relevant work as a payroll clerk. (R. 19). Therefore, the ALJ found that Jackson had not been "under a disability, as defined in the Social Security Act, at any time from March 26, 2006, the alleged onset date, through September 30, 2010, the date last insured." (*Id.*).

## V.   Analysis

The court now turns to Jackson's contentions on appeal—i.e., that the ALJ erred in his determination that Jackson was not totally and permanently disabled and disregarded or improperly weighed the record evidence in reaching that determination. Doc. 1 at 3.

*1. Alleged failure to properly weigh the medical evidence*

Jackson appears to argue that the ALJ erred in his determination by purportedly failing to account for the progression of Jackson's impairments over time. *See generally* doc. 1. The court notes that, as an initial matter, to be eligible for disability insurance benefits, Jackson must demonstrate that he had a disability on or before September 30, 2010, the last date on which he was insured. 42 U.S.C. § 423(a)(1)(A). Moreover, "[a] claimant that becomes disabled after he loses insured status must be denied disability insurance benefits despite his disability." *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012). Put simply, the ALJ's determination of disability cannot be based on Jackson's symptoms or ailments after his date last insured.

Turning to the facts at issue, the ALJ found that Jackson's impairments of degenerative disc disease of the lumbar spine and his residual limitations related to surgeries on his left wrist and shoulder, whether singly or in combination, did not meet or medically equal listing-level severity as of Jackson's date last insured. (R. 18). In reaching this decision, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (R. 15). The ALJ also engaged in a thorough discussion of Jackson's medical history, detailing Jackson's 1992 on the job injuries that resulted in the left wrist and shoulder surgeries. (R. 17). Based on the

review of the medical record, the ALJ noted that the last functional assessment performed in 1993 showed that Jackson was still capable of performing light work activity, (*see* R. 477–482), and that there was no indication that Jackson's functioning had decreased between the 1993 determination and his date last insured, (R. 18). Next, noting the lack of medical records during the relevant time period, the ALJ added that there was no medical evidence to support Jackson's contention that his medical ailments rendered him unable to work prior to September 2010. (R. 18).

Moreover, in his discussion of Jackson's wife's testimony about Jackson's current limitations, the ALJ highlighted a contradiction between her claims that Jackson continued to engage in a car resale hobby until his stroke in 2012, (R. 17, 61), and Jackson's testimony that he ended that hobby in 2000. According to the ALJ, this testimony established that Jackson's symptoms were not as disabling as he claimed. The ALJ also noted that in the functional evaluation Jackson's wife completed, the limitations she discussed primarily referenced Jackson's disabilities as they related to his 2012 stroke. (R. 219). Of particular relevance to the ALJ's analysis was that, although Jackson alleged an inability to work beginning March 26, 2006 due to hemorrhagic stroke with left side weakness, left wrist fusion, severe lower back arthritis, left hip arthritis, and left knee arthritis, Jackson's stroke actually occurred in 2012, two years after the date last insured. As a result, the ALJ

could not consider the stroke and its resulting impairments for purposes of disability determination. (R. 17).

"[T]here is no rigid requirement that the [administrative law judge] specifically refer to every piece of evidence in his decision so long as our Court can conclude [that] the [administrative law judge] considered [the claimant's] medical condition as a whole." *Parks ex rel. D.P. v. Comm'r Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015). Relevant here, it is clear from the ALJ's opinion that he, in fact, considered Jackson's medical condition as a whole. Therefore, because the record evidence is consistent with the ALJ's conclusion that, during the relevant time period, Jackson's impairments were not severe enough in combination to disqualify him from work, no basis exists to reverse the ALJ on this issue.

### 2. *The ALJ stated adequate reasons for discrediting Jackson's testimony*

Jackson alleges also that the ALJ provided inadequate reasons for finding him not credible. Where the ALJ discredits subjective testimony, he must "articulate explicit and express reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Moreover, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam). A failure to provide articulated reasons, however, requires that the

testimony be accepted as true. *Wilson,* 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ provided sufficient reasons for discrediting Jackson's testimony. As an initial matter, the ALJ found that the medical records did not support Jackson's subjective claims of the intensity, persistence, and limiting effects of his back pain during the insured period. (R. 16). The ALJ began by pointing to the limited medical record from March 2006 to September 2010. Still, as discussed above, the ALJ performed a comprehensive summary of Jackson's medical history. The ALJ discussed Jackson's permanent restrictions that limited him to performing work at a light level of exertion as the result of an on the job injury and Jackson's history of back pain, noting that although Jackson sought chiropractic treatment in 2008, nothing in the record supported his subjective account of the severity of his complaints. (R. 17–18). Second, the ALJ pointed out the inconsistencies between Jackson's professed limitations and the limitations noted in the record—i.e., that although Jackson claimed that he had disabling back pain, there is no evidence that Jackson sought treatment for that pain after 2008 until 2012. Even then, as the ALJ noted, when Jackson returned to a chiropractic clinic in 2012, he described his pain as minimal and informed the staff that he had plans to take his grandchildren to the beach. (R. 18, 336). As the ALJ discussed, although these activities occurred after the date last insured, they demonstrate Jackson's ability to perform at a significant

level of functioning at that time. (R. 17). Third, as to the functional assessment Jackson's wife completed, the ALJ explained that while he gave some weight to her report, it primarily contained information after the date last insured—i.e., she filled out the assessment in 2012 and listed limitations based upon Jackson's condition after his stroke in 2012. (R. 16). Lastly, the ALJ pointed to Jackson's testimony that he would have continued to work if his previous employer had not laid him off, which the ALJ said belied Jackson's contentions about the severity of his symptoms. (R. 17, 53).

Based on the court's review of the record, it is readily apparent that the ALJ thoroughly recounted Jackson's medical records and cited to various examples where Jackson's subjective testimony contradicted his medical records. (R. 72–73). Accordingly, the court concludes that the ALJ clearly articulated his reasons for discrediting Jackson's statements about his pain levels during the time period at issue. *See Wilson v. Barnhart*, 284 F.3d at 1226 (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

## Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Jackson was not disabled during the period from March 26, 2006 until September 30, 2010 is supported by substantial evidence, and that the ALJ applied

the proper legal standards in reaching that determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

    **DONE** the 29th day of September, 2016.

                                                           _____
                                                            **ABDUL K. KALLON**
                                              UNITED STATES DISTRICT JUDGE